No. 25,267.

W. E. Crum and W. F. Skaer, Appellees, v. Guffey-Gillespie Oil Company, Appellant.

SYLLABUS BY THE COURT.

1. Contract—Sale of Oil and Gas Lease—Title of Land—Trial to Court— Effect of Incompetent Evidence. Rule followed that the admission of testimony of challenged competency does not constitute reversible error where the trial is by the court without a jury and where there is some competent evidence to support the trial court's finding on the point affected by the questioned testimony.

2. Same—Title to be Satisfactory — Requirement as to Title Fully Met. Record examined and held to show that in the contract for the sale of an oil and gas lease the title was to be one which would satisfy the reasonable requirements of defendant's attorney, and held also that all the specified requirements were fully met.

3. Same—Reservation of "All Mineral Lands" Granted to Union Pacific— No Cloud on Title. The reservation of all mineral land by the government in its land grant to the Union Pacific railroad in Saline county patented over thirty years ago does not constitute a defect in title nor render the title to such land unmerchantable in a contract for the sale of an oil and gas lease on such land.

4. Same—Judicial Notice that Union Pacific Railroad Lands Covered Agricultural Lands Only. The court takes judicial notice that the government land grants in Saline county to the Union Pacific railroad covered agricultural lands and no other, and held, that the possibility that such lands may also become valuable as mineral lands at some future time does not and cannot affect the rights of persons holding under the original patentee.

5. Same—Reference to the Existence of Mortgages in Contract Construed. The contract examined and held to show that the possible existence of mortgages on the land covered by the lease was contemplated by the parties and their rights thereunder defined, and that the riddance of such mortgages was not required by defendant's attorney, nor did their existence cause the title to be unmerchantable.

Appeal from Chautauqua district court; Allison T. Ayres, judge. Opinion filed November 8, 1924. Affirmed.

Carl Ackarman, of Sedan, Y. P. Broome, W. A. Sipe, Jr., W. P. McGinnis, and J. C. Wilhoit, all of Tulsa, Okla., for the appellant.

C. G. Yankey, W. E. Holmes, D. W. Eaton, and John L. Gleason, all of Wichita, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action for the contract price of an oil and gas lease on eighty acres of Saline county land. The chief de-

fense relied on was that plaintiffs had failed to furnish a good and
merchantable title as agreed to in the contract of purchase.

The trial court made findings of fact and conclusions of law
which were favorable to plaintiffs, and judgment was entered pur-
suant thereto.

Defendant assigns various errors which will be noted.

It is first contended that the trial court erred in admitting oral
testimony concerning the Skaer-Crum Oil Corporation and of plain-
tiffs' ownership by succession of this defunct corporation's assets,
which included the amount due on this contract as a chose in action.
Since there was no jury to be misled, even if the evidence was incom-
petent, and since there was competent evidence to the same effect,
no prejudicial error was committed in admitting the testimony com-
plained of.   (*Starbuck v. Kingore,* 112 Kan. 102, 210 Pac. 930, and
citations.)

It is next urged that the trial court should have made a finding
that plaintiffs had not tendered a good and merchantable title.   But
the record is clear that the title under this contract was to be one
which would satisfy the reasonable requirements of defendant's
attorney to whom the abstract of title was submitted, and the trial
court found that all such requirements were met by plaintiffs.   That
was a sufficient compliance with plaintiff's obligation so far as title
was concerned.   (*Wheeler v. Beem,* 111 Kan. 700; 208 Pac. 626.)

But error is also assigned on the trial court's finding that all the
title requirements specified by defendant's attorney had been fully
met.   Under this assignment the appellant raises this point:   The
eighty acres covered by the lease in controversy was part of the
United States land grant to the Union Pacific railroad.   That grant
reserved to the government "all mineral land, should any such be
found," in the tracts granted to the railway company.   It is gravely
suggested that this reservation may defeat the original patent and
the rights of all who hold thereunder.   But we have already said
that this land was in Saline county.   The court takes judicial no-
tice of the fact that Saline county land is now and always has been
considered as agricultural, not mineral land.   If modern enterprise
at some future time should discover that the land has also mineral
value, that would not defeat the title.   The government parted with
all its title to this property by its patent issued thirty-odd years ago
and all questions as to the validity of the rights of persons holding
thereunder were laid at rest by statute a generation ago.   (Act of

Congress March 3, 1891, 26 U. S. Stat. 1099, U. S. Comp. Stat. 1918, § 5114; Act of Congress March 2, 1896, ch. 39, § 1, 29 U. S. Stat. 42, U. S. Comp. Stat. 1918, § 4901 *et seq.*) Furthermore, when defendant's attorney made his memorandum of requirements as to this abstract he made no requirement touching the reservation of mineral lands from the government grants to the patentee. What possible requirement could he conceivably have had in mind? It would be libeling his intelligence to construe his remark relating to reservation of mineral lands in the grant to the railway company to mean that before he would approve plaintiffs' title they would have to secure from congress a statutory waiver of the government's reserved mineral rights in this land. This point attempted by defendant is really too captious for patient consideration.

Another objection to the sufficiency of the title pertains to the mortgages covering this and other lands owned by the lessor. No requirement as to these mortgages was made by defendant's attorney. This eighty acres was only a relatively small part of the lands (880 acres) covered by the mortgages. The lease apparently contemplated the possible existence of mortgages on the real estate and defined the rights of the lessee under such circumstances. The lease provided:

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgage, taxes or other liens on the above-described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof."

It will be noted that while the lessor agreed to defend the title, he did not warrant the real estate to be free from incumbrances; the lessee was given the right to redeem from any and all such incumbrances and was to have subrogation therefor. This provision in the lease contract precludes the idea that the land was warranted to be free from incumbrance; and certainly such a contract stipulation did not render the title unmerchantable, since the lessee acquired precisely what he bargained for.

Another contention of defendant is that the trial court erred in finding that at the time this action was begun the plaintiffs owned and held all rights of the Skaer-Crum Oil Corporation and of their predecessors in title. The evidence disclosed that the Skaer-Crum corporation had been dissolved and its debts liquidated. Its assets, therefore, belonged to the stockholders. The plaintiffs were the

only stockholders. They were therefore the beneficial owners of the chose in action in controversy. If on dissolution there had been any unsettled business to attend to, the last board of directors would *ex officio* have been trustees for the winding up of the corporate business and for dividing the property among the stockholders. The plaintiffs were members of the last board of directors as well as the only stockholders. Their ownership of the chose in action seems to have been fairly well established from the evidence, and it is not conceivable that it could have belonged to anybody else. So the trial court's finding of fact on the point cannot be disturbed.

The record contains no error prejudicial to defendant, and the judgment is therefore affirmed.